UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Case No. 24-cr-0235-bhl

MELISSA KAY RICE,

        Defendant.

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

        On January 13, 2025, Melissa Kay Rice pleaded guilty to two counts of bank fraud in violation of 18 U.S.C. §1344(2). (ECF No. 4.) On April 21, 2025, the Court sentenced Rice to eighteen (18) months' imprisonment on both counts to run concurrently for a total sentence of eighteen (18) months and entered judgment. (ECF No. 12.) Rice did not appeal her sentence. Rice is currently housed at FCI Waseca in Waseca, Minnesota with a release date of June 9, 2026. *See* Find an Inmate, Federal Bureau of Prisons *available at* https://www.bop.gov/inmateloc/ (last visited 1/26/26). On December 12, 2025, Rice filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). (ECF No. 14.) The government filed a response on December 29, 2025. (ECF No. 17.)

        Rice's motion is based on medical concerns arising from the prison clinic's decision to change her medication from Bupropion to Cymbalta. She explains that when she arrived at FCI Waseca on May 29, 2025, she only had ninety (90) days of her medication including Sertraline and Bupropion XL. (ECF No. 14-1 at 3.) During her June 10, 2025 medical intake, Rice was informed that her Bupropion would be replaced with Cymbalta. (*Id.*) Rice states that starting July 11, 2025, she experienced multiple seizures and was hospitalized, claiming the combination of medications caused "Seratonin Syndrome" resulting in tremors, continued seizures, and muscle cramps. (*Id.* at 3, 7.)

        On or about August 14, 2025, Rice requested a reduction in sentence based on her debilitated medical condition with Waseca's warden. (ECF No. 14 at 3.) On August 27, 2025, the

warden denied her request and noted that considerations for a debilitated medical condition should be given if "the inmate is incapable of self-care and is totally confined to a bed or chair or is capable of only limited self-care and is confined to a bed or chair more than 50% of the waking hours." (ECF No. 14-1 at 2.) After a review of Rice's medical records, the warden determined that she did not meet the minimum requirements of this provision. (*Id.*) Because the record confirms that Rice is not entitled to compassionate release, the Court will deny her motion.

## ANALYSIS

The Court's consideration of a compassionate release motion is a multi-step process. The statute allows the Court to modify a term of imprisonment based on a defendant's motion if two conditions are met. First, the defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or show a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). Second, the defendant must demonstrate that "extraordinary and compelling reasons warrant such a reduction." *Id.*; *United States v. Sanford*, 986 F.3d 779, 781-82 (7th Cir. 2021) ("the defendant must first present h[er] request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier") (internal quotations omitted). Only if it finds the exhaustion requirement satisfied does the Court then determine whether there are "extraordinary and compelling reasons" warranting a reduction in the defendant's sentence, consistent with the sentencing factors set forth in 18 U.S.C. §3553(a).

Guideline Section 1B1.13 explains that "extraordinary and compelling reasons exist" when:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>     (i) suffering from a serious physical or medical condition,
>     (ii) suffering from a serious functional or cognitive impairment, or
>     (iii) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. §1B1.13(b)(1)(A), (B), & (C). If the sentencing court is satisfied that an extraordinary and compelling reason exists, it must then consider whether the defendant "is not a danger" to others or the community, as provided in 18 U.S.C. §3142(g); U.S.S.G. §1B1.13(a). It must also take into account the sentencing factors set forth in 18 U.S.C. §3553(a), if applicable. 18 U.S.C. §3582(c)(1)(A).

While Rice appears to have exhausted her administrative remedies by first presenting her claims to the warden, she must also show "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. §3582(c)(1)(A). The reduction must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," *id.*, including those set forth in recently amended Guideline Section 1B1.13. A district court has "discretion to evaluate multiple circumstances" and determine whether, collectively, they amount to an "extraordinary and compelling reason" for early release. *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023).

Rice has not shown extraordinary or compelling circumstances. She has not demonstrated that she is suffering from a terminal illness or that her ability to provide self-care has been substantially diminished. Rice seems to argue that she "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §1B1.13(b)(1)(C). Rice claims that the substitution of Cymbalta for Bupropion led to a fall and tremors, causing an 8-day stay at the hospital in July 2025. After her stay, the medical staff discontinued Cymbalta and resumed Bupropion. They also flagged the issue as possibly psychological in origin, because "[t]here seem[ed] to be [a] behavior component to the patient's tremor." (ECF No. 17-1 at 139.) By the end of her stay at the hospital, Rice "was displaying tremulousness only when medical staff would walk up to the bedside." (*Id.* at 16.)

On July 23, 2025, a medical doctor explained to Rice that "1) serotonin syndrome is temporary; 2) neurology did not feel she was having any seizure activity during her first hospital

stay; 3) ER doctor does not feel she had a seizure but rather some tremors/anxiety; and 4) it appears this is similar to what was going on during her prior hospitalization and this is perhaps some anxiety/movement disorder rather than serotonin syndrome." (*Id.* at 16–17.) Moreover, the doctor explained that the Bupropion she claims she needs "can lower seizure threshold," and thus future seizures would be a reason to remove this medication. (*Id.* at 17.) In August, a month after her return to the prison facility, a prison staff "visualize[d] that inmate can stop the tremors when she has an active task to complete such as closing her book." (*Id.* at 4.) Although Rice is concerned about the tremor and has raised concerns about the quality of the care she is receiving, there is no evidence in the medical records indicating that she is not receiving appropriate care in custody. It appears that Rice's medical condition is being adequately and professionally addressed. Without demonstrating extraordinary circumstances, the Court does not find that Rice's dissatisfaction with the medical care she is being provided is a proper basis for compassionate release.

Moreover, the applicable 3553(a) factors relevant at sentencing and at this juncture continue to demonstrate that Rice ought to serve the entirety of the below-guidelines sentence she received. From 2021 through 2023, Rice embezzled $675,335.67 from her former employer by generating more than 100 checks using QuickBooks accounting software, falsifying the business owner's signatures, and using the checks for personal expenditures. Rice was the only employee who managed the business accounts, and she further concealed the falsified payments by manipulating balance sheets or manually modifying the accounts to disguise the actual payee. She clearly abused her position of trust. The guidelines recommended a sentence of 27 – 33 months' imprisonment. The Court imposed a below guidelines sentence of eighteen months' incarceration. Granting Rice's motion for release would seriously undermine the purposes of her sentencing, namely providing just punishment, promoting respect for the law and reflecting the seriousness of the offense. The Court will therefore deny her motion for compassionate release.

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 14, is **DENIED**.

Dated at Milwaukee, Wisconsin on January 26, 2026.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge